IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| HAROLD L. STALEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:24-cv-00141-BL-SMD |
| | ) | |
| CITY OF ELBA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## **ORDER**

Plaintiff Harold L. Staley filed an amended complaint on April 2, 2025. (Doc. 33). On December 30, 2025, the Magistrate Judge recommended that the court grant the Defendants' motion to dismiss Staley's complaint for failure to state a claim upon which relief could be granted. (Docs. 36, 48). Staley filed objections to the recommendation. (Doc. 49).

A district judge must "make a *de novo* determination of those portions of the [magistrate judge's] report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see also* FED. R. CIV. P. 72(b)(3) ("The district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to."). A district court's obligation to "make a de novo *determination* of those portions of the report or specified proposed findings or recommendations to which objection is made" requires a

district judge to "give *fresh consideration* to those issues to which specific objection has been made by a party." *United States v. Raddatz*, 447 U.S. 667, 673, 675 (1980) (internal quotations and citations omitted) (emphasis in *Raddatz*). A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).  Upon consideration of the Recommendation of the Magistrate Judge and after careful review of the file, the court will adopt the Recommendation and dismiss this action with prejudice.

## I. The 42 U.S.C. § 1981 Claims

The Magistrate Judge recommends dismissing Staley's § 1981 claims on the basis that "§ 1981 does not provide a cause of action against state actors, government entities, or municipalities. Instead, claims alleging violations of § 1981 by state actors and municipalities must be brought pursuant to 42 U.S.C. § 1983." (Doc. 48 at 9).  Staley objects as follows:

> While it is correct that § 1981 claims against state actors must be pursued through 42 U.S.C. § 1983, this procedural requirement does not warrant outright dismissal of the § 1981 cause of action where, as here, the claim is properly channeled through § 1983 and supported by factual allegations that plausibly demonstrate discriminatory conduct.

(Doc. 49 at 4–5).

With respect to Staley's attempt to assert a § 1981 claim against Defendants Maddox and Bane, the court agrees with the Magistrate Judge that such claims are due to be dismissed on that basis alone as there is no accompanying § 1983 claim

2

with which they can be merged.  However, the court will consider the § 1981 claim against the City merged with Staley's § 1983 claim against the City.  It appears that, in cases where a § 1981 claim is brought alone, courts dismiss it, but when a § 1981 claim is brought alongside a § 1983 claim, courts merge the two.  *See, e.g.*, *Jones v. Fulton Cnty., Ga.*, 446 F. App'x 187, 189 (11th Cir. 2011) ("Plaintiffs' section 1981 claims merge into their section 1983 claims."); *Mahoney v. Owens*, 818 F. App'x 894, 898 (11th Cir. 2020) (dismissing § 1981 claims and noting that plaintiffs did not plead a § 1983 claim); *Taylor v. Alabama*, 95 F. Supp. 2d 1297, 1309 (M.D. Ala. 2000) ("[T]he court is not required to, and need not, dismiss Plaintiff's merged § 1981 claims. As explained in *Godby [v. Montgomery County Board of Education*, 996 F. Supp. 1390 (M.D. Ala. 1998)], 'where claims have merged . . . , it is not necessary for th[e] court to dismiss them on that basis. The court need only treat them as a single claim.'"); *Smiley v. Alabama Dep't of Transp.*, 778 F. Supp. 2d 1283, 1296–97 (M.D. Ala. 2011) ("[T]o the extent that Smiley alleges violations of his rights pursuant to § 1981 to be free from discrimination on account of his race, he may only seek a remedy for those alleged violations of his statutory rights by bringing suit pursuant to § 1983.  A review of the allegations of Counts One and Two of the Complaint reveals that he has pleaded his claims in this fashion.").  Here, Staley asserts § 1981 claims against all defendants, and a § 1983 claim against the

City. (Doc. 33 at 12–13) ("Monell Claim Pursuant to 42 U.S.C. § 1983"). Therefore, the § 1981 claim against the City will be merged with Staley's § 1983 claim.

## II. The 42 U.S.C. § 1983 Claim

The Magistrate Judge states that Staley's § 1983 claim is based exclusively on the Equal Protection Clause of the Fourteenth Amendment, rejecting Staley's assertion (*see* doc. 43 at 28) that his § 1983 claim is based on both his constitutional rights and his federal statutory rights. (Doc. 48 at 10 n.5).[1] For the following reasons, the court will adopt the Magistrate Judge's recommendation to dismiss Staley's § 1983 claim, regardless of whether it is based on the Equal Protection Clause or § 1981.[2]

The Magistrate Judge recommends dismissing the Plaintiff's § 1983 claim on the basis that "Staley's amended complaint alleges a single adverse employment action against a single employee and does not allege sufficient facts showing a municipal custom or policy sufficient to impute liability on the City for any

---

[1] The Magistrate Judge relies on the fact that Count II of Staley's complaint (setting forth his § 1983 claim) references only "constitutional rights" and does not reference any violation of federal statutory rights. (Doc. 48 at 10 n.5) (citing *Patel v. Lanier Cnty.*, 969 F.3d 1173, 1182 n.6 (11th Cir. 2020) (a district court "may not infer claims other than those that plainly appear on the face of the complaint")). However, as stated above, the court will consider Staley's § 1981 claim merged with his § 1983 claim.

[2] The Supreme Court has held that a plaintiff asserting a § 1983 claim against a municipality based on a violation of §1981 "must show that the violation of his 'right to make contracts' protected by § 1981 was caused by a custom or policy within the meaning of *Monell* and subsequent cases." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735–36 (1989).

constitutional violations that Staley purportedly suffered." (Doc. 48 at 15). The Magistrate Judge addressed three theories Staley employs to support municipal liability: (1) widespread custom or practice, (2) failure to train, and (3) final policymaker. (Doc. 49 at 8) (citing *Monell v. Department of Social Services*, 436 U.S. 658, 690–91 (1978) and *City of Canton v. Harris*, 489 U.S. 378, 387 (1989)). The court will address a fourth theory that appears in Staley's arguments: the "cat's paw" theory. (*See* doc. 43 at 2 (the table of contents of Staley's response to the motion to dismiss including "v. Cat's Paw Theory")); *Lewis v. City of Union City, Georgia*, 934 F.3d 1169, 1189 (11th Cir. 2019).

### A. Widespread Custom or Practice

Staley's chief objection is that the Magistrate Judge's analysis disregarded eighteen paragraphs of the complaint. (Doc. 49 at 2, 10). According to Staley, these allegations are critical to establish a widespread custom or practice of racial discrimination by the City of Elba. Contrary to Staley's objection, each of these allegations are mentioned in the Magistrate Judge's Recommendation. (Doc. 48 at 2–3, 18–19, 24 at n.12). It appears that Staley's real objection is to the Magistrate Judge's conclusion that, despite these allegations, "Staley's amended complaint alleges a *single* adverse employment action against a single employee and does not allege sufficient facts showing a municipal custom or policy sufficient to impute

liability on the City for any constitutional violations that Staley purportedly suffered."  (Doc. 48 at 15) (emphasis added).

Staley argues in his objections that he has "identified numerous 'examples beyond his own [termination] of widespread unconstitutional conduct'"; has "made several allegations with respect to the preferential treatment of white, similarly situated officers"[3]; and has "made significant allegations with respect to his worsening treatment after the Defendants discovered his interracial relationship." (Doc. 49 at 10–11).  Ultimately, Staley says he has alleged a "widespread policy or custom of discriminatory treatment in the form of preferential treatment to white officers, adverse employment action such as micromanaging and removal of certain duties once the Defendants learned of his interracial relationship, and disparaging remarks from both the named Defendants and the City Council alike."  (Doc. 49 at 13).

The court agrees with the Magistrate Judge that Staley's allegations are not sufficient to establish a custom, policy, consistent or widespread practice within the municipality's governing body.  *See McDowell v. Brown*, 392 F.3d 1283, 1290 (11th Cir. 2004).  The Eleventh Circuit has explained:

> We defined custom as "a practice that is so settled and permanent that it takes on the force of the law." *Wayne [v. Jarvis*, 197 F.3d 1098, 1105 (11th Cir. 1999)] (quoting *Sewell v. Town of Lake Hamilton,* 117

---

[3] Staley's argument regarding comparator treatment was addressed and appropriately rejected by the Magistrate Judge. (Doc. 49 at 21–22).  Staley's corresponding objection is addressed *infra*.

F.3d 488, 489 (11th Cir.1997), *cert. denied,* 522 U.S. 1075, 118 S. Ct. 852, 139 L.Ed.2d 753 (1998)). In order for a plaintiff to demonstrate a policy or custom, it is "generally necessary to show a persistent and wide-spread practice." *Id.* (internal quotations and citations omitted). *See also, Church v. City of Huntsville*, 30 F.3d 1332, 1345 (11th Cir.1994).

> This threshold identification of a custom or policy "ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." [*Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403–04 (1997)] (citations omitted). This prevents the imposition of liability based upon an isolated incident. *See Depew v. City of St. Marys,* 787 F.2d 1496 (11th Cir.1986) ("Normally, random acts or isolated incidents are insufficient to establish a custom or policy"). Rather, the incident must result from a demonstrated practice. *See Wayne*, 197 F.3d at 1106 (determining that a single decision, "even if erroneous, would not support the inference that the County had a custom or policy" in place).

*McDowell*, 392 F.3d at 1290.

Here, the personal racial bias of City Clerk Bane (assuming Staley's allegations are true) does not establish that the municipality operated under a custom or policy of deliberate indifference towards racial discrimination. To the extent Staley is arguing that Elba has a widespread custom or practice of ignoring or rubber stamping racially biased decisions made by Defendant Bane on behalf of the mayor, that argument fails because even if there were enough in the complaint to establish that Defendant Bane used the City Council as a cat's paw to effectuate her racial animus in Staley's case (*see* discussion *infra*), there is only one incident alleged in the complaint. This is insufficient to establish that a persistent or widespread

7

practice of deliberate indifference towards racial discrimination caused Staley's termination.

**B. Failure to Train**

The Magistrate Judge rejects Staley's failure to train theory for the following reasons:

> Staley's amended complaint is void of well-pleaded factual allegations suggesting that the City's training practices were inadequate; that the City was deliberately indifferent to the known or obvious consequences of those deficiencies; and that the purportedly inadequate training caused his alleged constitutional injury. Indeed, Staley does not identify any specific deficiency in the City's training program, nor does he allege a pattern of similar constitutional violations that would have placed the City on actual or constructive notice of the need to train. Simply put, Staley's allegations fall well-short of establishing that the City was deliberately indifferent to its need to train its employees regarding discrimination. Therefore, to the extent Staley attempts to impute liability on the City pursuant to a failure to train theory, his § 1983 claim fails. *See, e.g.*, *Underwood v. City of Bessemer*, 11 F.4th 1317, 1332 (11th Cir. 2021) (finding that the plaintiff did not establish municipal liability for failure to train because the plaintiff did not demonstrate "some evidence of a pattern of improper training" or "show that [the city] was aware of the deficiencies in [its] program").

(Doc. 48 at 14).

Staley argues in his objections that he "has clearly pled 'some evidence of a pattern of improper training' with respect to both the Mayor and City Council's preferential treatment of white officers *and* the discriminatory actions of both the City Clerk and Mayor towards the Plaintiff." (Doc. 49 at 14). However, as stated above, the complaint is void of any allegations that the council members knew about

8

Defendant Bane's alleged racial bias. With respect to the alleged "preferential treatment of white officers," the court agrees with the Magistrate Judge's conclusion that Elba Police Department Lieutenant Shane Arnett was not similarly situated to Staley such that their disparate treatment has legal significance.

Finally,

> [a] pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train. *Bryan Cty.*, 520 U.S., at 409, 117 S. Ct. 1382. Policymakers' "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability." *Id.*, at 407, 117 S. Ct. 1382. Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.

*Connick v. Thompson*, 563 U.S. 51, 62 (2011). Here, there is only one alleged constitutional violation: Staley's termination. While Staley alleges many acts of personal racial bias, there is no pattern of *constitutional violations* by Defendant Bane to support a failure to train theory.

### C. Final Policymaker

Like the theories above, the Magistrate Judge rejects Staley's final policymaker theory because "the amended complaint does not allege that Staley's termination decision was intended to establish or implement a municipal policy of discrimination, nor does he allege that other similar terminations occurred or that

9

any final policymaker engaged in repeated acts of discrimination." (Doc. 48 at 15). Staley objects as follows: "In *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986), the Supreme Court held that even a single decision by a final policymaker may trigger municipal liability if the official has final authority." (Doc. 49 at 15). The court agrees with Staley on this point.

> [I]t is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances. No one has ever doubted, for instance, that a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body—whether or not that body had taken similar action in the past or intended to do so in the future—because even a single decision by such a body unquestionably constitutes an act of official government policy.

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). *See also Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 406 (1997) (holding that a "decision, duly promulgated by city lawmakers, could trigger municipal liability [under § 1983] if the decision itself were found to be unconstitutional"); *see, e.g.*, *Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981) (involving a formal decision of a municipal legislative body, specifically, to cancel a license permitting a concert following a dispute over the performance's content); *Owen v. Independence*, 445 U.S. 622 (1980) (involving a formal decision of a municipal legislative body, specifically, to censor and discharge an employee without a hearing).

The final policymaker theory allows a municipality to be held liable for a single unconstitutional action, even despite *Monell*'s limitation on municipal liability.  As the Supreme Court explained:

> In *Pembaur*, it was not disputed that the prosecutor had specifically directed the action resulting in the deprivation of petitioner's rights. The conclusion that the decision was that of a final municipal decisionmaker and was therefore properly attributable to the municipality established municipal liability. No questions of fault or causation arose.

*Brown*, 520 U.S. at 406.

Here, however, Staley's attempt to apply the final policymaker theory fails because he has not identified a final policymaker as to hiring and firing decisions for the City of Elba who acted with discriminatory intent.  *See McMillian v. Monroe Cnty., Ala.*, 520 U.S. 781, 785 (1997) ("Our cases on the liability of local governments under § 1983 instruct us to ask whether governmental officials are final policymakers for the local government in a particular area, or on a particular issue."). The Eleventh Circuit has held that

> a municipal official does not have final policymaking authority over a particular subject matter when that official's decisions are subject to meaningful administrative review. *See Scala v. City of Winter Park*, 116 F.3d 1396, 1398–99 (11th Cir.1997) (holding that city manager was not a final policymaker with respect to employment termination decisions at municipal fire department where those decisions were reviewable by the city civil service board); *Manor Healthcare Corp. v. Lomelo*, 929 F.2d 633, 638 (11th Cir.1991) (holding that a mayor was not a final policymaker with respect to zoning decisions where the city charter provided that the city counsel could override the mayor's veto of zoning ordinances); *Mandel v. Doe*,

11

888 F.2d 783, 792–94 (11th Cir.1989) (recognizing that a municipal officer has final policymaking authority when his decisions "are not subject to review" and holding that discretionary review initiated by the municipal official himself does not prevent the official from being a final policymaker); *cf. Hill v. Clifton*, 74 F.3d 1150, 1152 (11th Cir.1996) (accepting concession that city police chief was not final policymaker with respect to employment decisions where police chief's decisions could be reversed by the city manager); *Martinez v. City of Opa–Locka*, 971 F.2d 708, 713–15 (11th Cir.1992) (finding final policymaking authority where "the City Manager's decision to hire or fire administrative personnel is completely insulated from review").

*Morro v. City of Birmingham*, 117 F.3d 508, 514 (11th Cir. 1997) (holding that "local law makes the Jefferson County Personnel Board, and not the police chief, the final policymaker with respect to police dismissals, demotions, or suspensions.").

Here, the decision to terminate Staley, whether it was by Mayor Maddox or Defendant Bane, was subject to administrative review: the City Council's hearing and voting process. (Doc. 33 at 11–12). Therefore, neither Bane nor Maddox was a final policymaker in this context; the City Council was. There are insufficient allegations in the complaint to establish that the council's majority vote to uphold Staley's termination was itself unconstitutional (i.e. was motivated by racial bias). As the Magistrate Judge points out, the only allegations in the complaint as to any members of the City Council are (1) that the mayor failed to "independently investigate" the reasons provided by the City Clerk for terminating Staley, (2) that, shortly after Staley was hired, he was told by "a citizen" that two white members of the council "were adamant they didn't want a black chief" (doc. 33 at 4); (3) that all

of the white members voted to approve the termination (doc. 33 at 12); (4) that one

black member voted against it; and (5) that one black member abstained from

voting.[4]  These allegations are insufficient to allege that the council members who

voted to uphold Staley's termination by majority vote were unconstitutionally

motivated by racial bias.

The Eleventh Circuit has further reasoned:

> Where review of a municipal official's employment decision does exist, a plaintiff can attempt to show that the review was not meaningful, but rather "'serve[s] as the conduit of the subordinate's improper motive'" by "'rubber-stamp[ing] the recommendation of a subordinate.'" *Quinn v. Monroe Cty.*, 330 F.3d 1320, 1326 (11th Cir. 2003) (quoting *Hitt v. Connell*, 301 F.3d 240, 248 (5th Cir. 2002)); *see also Scala v. City of Winter Park*, 116 F.3d 1396, 1399 (11th Cir. 1997)). However, where there is an opportunity for the plaintiff to appeal an official's decision to a reviewing board, such review is generally sufficient to find that the official was not the final policymaker. *See Scala*, 116 F.3d at 1403 (finding meaningful review where "there is no evidence . . . that the Board's decision approved any improper motive that Barrett or Younger may have had"); *Quinn*, 330 F.3d at 1326 (finding meaningful review where "the Council afforded her a full adversarial and evidentiary hearing" and both parties were represented by counsel); *see also Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1293 (11th Cir. 2004) (finding no meaningful review despite "appellate process that was theoretically available on paper" because plaintiff "as a practical matter [could not] take advantage of it").

---

[4] As part of his objections, Staley states that the majority that voted to terminate him was comprised of only four people: the mayor, the two council members who allegedly did not want a black police chief, and one other person.  (Doc. 49 at 23).  This fact is not asserted in the complaint.

*Lewis v. City of Union City, Georgia*, 934 F.3d 1169, 1190 (11th Cir. 2019).  This is key to Staley's case.  It appears that, ultimately, Staley wishes to proceed on a "cat's paw" theory of liability.  (*See* doc. 43 at 2 (the table of contents of Staley's response to the motion to dismiss including "v. Cat's Paw Theory")).  Staley alleges that Defendant Bane considered herself to be the "real mayor" of Elba and that she made decisions which should have been reserved for the mayor (such as to terminate Staley) based on her personal racial bias, drafting the administrative leave/termination letters to Staley on behalf of the mayor.  According to Staley, the mayor then failed to independently investigate the reasons provided by Bane in the letters.   "Under a 'cat's paw' theory, a non-decision-making employee's discriminatory animus may be imputed to a neutral decisionmaker when the decisionmaker has not independently investigated allegations of misconduct." *Lewis v. City of Union City, Georgia*, 934 F.3d 1169, 1189 (11th Cir. 2019).  "In such a case, the recommender is using the decisionmaker as a mere conduit, or 'cat's paw' to give effect to the recommender's discriminatory animus." *Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1332 (11th Cir. 1999) (*per curiam*).

In this case, the cat's paw theory fails.  Staley argues that the mayor's decision was, in reality, Bane's decision, and that, although the City Council provided administrative review of the decision, the review was not meaningful due to Bane's influence.  Or perhaps Staley intends to argue that the City Council's decision was

14

really Bane's decision, a mere rubber stamp approval of Bane's animus. Either way, Staley would have to plausibly allege that the two-hearing vote process the City Council undertook was merely a conduit to give effect to her racial animus against Staley or was otherwise not a meaningful review of the termination. Staley asserts that Bane unduly influenced the hearings by being present, testifying, discouraging others from testifying in Staley's favor, and by "repeatedly roll[ing] her eyes and ma[king] other offensive gestures during the testimony of [Staley's] witnesses." (Doc. 33 at 11–12). This, without more, does not make the hearing meaningless. The only serious allegation here is that Bane discouraged certain witnesses from testifying; however, the complaint does not specify who was discouraged and what their testimony would have entailed.

Ordinarily, a cat's paw theory applies where the real decisionmaker *failed to investigate* the reasons provided by the non-decisionmaker. *See Lewis*, 934 F.3d at 1189. While that may apply to Mayor Maddox's failure to investigate the reasons Bane provided in the letters, that cannot be said of the City Council, who was (as stated above) the real decision maker. At the hearings, the council heard testimony from witnesses called by Staley concerning the reasons provided in those letters. (Doc. 33 at 11). One member of the council voted against the termination.

Additionally, there are no factual allegations to suggest that the members of the City Council were deliberately indifferent to Defendant Bane's conduct. For

15

example, Staley does not allege that the council members knew Defendant Bane was behind the termination, rather than the mayor, or that Defendant Bane would likely provide pretextual reasons to justify a wrongful termination. Staley alleges that Bane often made racist comments and comments about making decisions on behalf of the mayor; however, Staley does not assert that these things were known and tolerated by the other members of the council.

There is simply not enough in the complaint to make it plausible that the hearings and vote were a meaningless rubber-stamping process or that Bane used the majority of the City Council as a "mere conduit" to give effect to her racial animus. *See Stimpson*, 186 F.3d at 1332 (*per curiam*). The letters drafted by Defendant Bane provided numerous valid reasons for the termination. (*See* docs. 37-7, 37-21, 37-22). Notably, Staley does not contest the reasons provided in the letters. The actions of Defendant Bane, even assuming they were motivated by racial animus, are not attributable to the municipality under a final policymaker or "cat's paw" theory.

## III. The Title VII Claim

The Magistrate Judge recommends dismissing Staley's Title VII claim against the City on the basis that "Staley has not asserted sufficient well-pleaded facts setting forth a 'convincing mosaic of circumstantial evidence' attributing his termination to intentional race discrimination." (Doc. 48 at 24).

16

First, Staley objects to the Magistrate Judge's application of the motion to dismiss standard of review and argues that the Defendants' motion should have been converted to a motion for summary judgment under Rule 56. (Doc. 49 at 19). However, the only documents relied upon in the Recommendation are docs. 37-7, 37-21, and 37-22, which are the letters received by Staley from the Defendants placing him on administrative leave, notifying him of his termination, and terminating him. The authenticity of these letters is not contested, and Staley references them in his complaint (doc. 33 at 7–8). *See SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010) ("In ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged."). Although the Defendants provided other materials in support of their motion (*see* docs. 37-1 through 20), there is no indication that the Magistrate Judge considered those materials. Therefore, Staley's objection is without merit.

Staley next argues that, "[w]hile comparators must be 'similarly situated in all material respects,' this is a factual determination for later stages, not a Rule 12 analysis before discovery has even begun. *Lewis v. City of Union City*, 918 F.3d 1213, 1225 (11th Cir. 2019)." (Doc. 49 at 22). The court agrees with the Magistrate Judge's conclusion that Staley and his comparator were not similarly situated so as to suggest that their differing treatment was racially motivated. (Doc. 48 at 21–22).

17

Staley cites *Lewis v. City of Union City*, which came before the Eleventh Circuit in the summary judgment stage; however, in *Lewis*, the Eleventh Circuit did not hold that the issue of whether a comparator is similarly situated is only for determination at later stages and may not be dispositive at the motion-to-dismiss stage.[5]  *See* 918 F.3d 1213, 1226 (11th Cir. 2019) ("[A] plaintiff proceeding under *McDonnell Douglas* must show that she and her comparators are 'similarly situated in all material respects . . . she must demonstrate—as part of her *prima facie* case—that she and her comparators are 'similarly situated in all material respects.'").  The United States District Court for the Middle District of Floria has addressed a similar argument:

> Plaintiffs argue that the *McDonnell Douglas* framework should not be considered in an[a]lyzing the sufficiency of a complaint. The Eleventh Circuit has recently minimized the importance of pleading a *prima facie* case of discrimination in line with the *McDonnell Douglas* framework. *See Davis v. Coca–Cola Bottling Co. Consol.,* 516 F.3d 955, 974 (11th Cir. 2008) ("Although a Title VII complaint need not allege facts sufficient to make out a classic *McDonnell Douglas prima facie* case, it must provide enough factual matter (taken as true) to suggest intentional . . . discrimination."); *Bowers v. Bd. of Regents of Univ. Sys. of Ga.,* 509 Fed. Appx. 906, 910 (11th Cir.2013) (same). The Supreme Court progenitor in both cases, however, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S. Ct. 992, 152 L.Ed.2d 1 (2002), was overturned in [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007),]

---

[5] As the Defendants point out, in his response to the motion to dismiss and his objections to the Recommendation, Staley uses citations to cases that do not exist and falsely purports to quote language which does not exist in any case.  (Doc. 52 at 10–13); *See, e.g.*, doc. 43 at 23 (purporting to quote *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1200 (11th Cir. 2013); doc. 43 at 24 (purporting to cite "*Est. of Osorio v. Miami-Dade Cnty.*, 2023 WL 4003457 (S.D. Fla. June 15, 2023)"); and doc. 49 at 28 (purporting to cite "*Greer v. DeKalb County*, 2009 WL 10101675, at *4 (N.D. Ga. July 13, 2009)").

and replaced by the more exacting pleading standard discussed in in *Twombly* and [*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)]. *See Francis v. Giacomelli,* 588 F.3d 186, 192 n. 1 (4th Cir.2009) (noting that the pleading standard in *Swierkiewicz* "was explicitly overruled in *Twombly*" ); *Trademotion, LLC v. Marketcliq, Inc.*, 857 F.Supp.2d 1285, 1289 (M.D. Fla. 2012) (same).

Moreover, the contention that the *McDonnell Douglas* framework is inapplicable in the consideration of a motion to dismiss is belied by the Eleventh Circuit's treatment of appeals from grants of motions to dismiss in § 1981 and Title VII claims. *See, e.g.*, *Patel v. Ga. Dep't BHDD*, 485 Fed. Appx. 982, 983 (11th Cir. 2012); *Jackson* [*v. BellSouth Telecommunications*, 372 F.3d 1250, 1271–72 (11th Cir. 2004)]. Plaintiffs need only plead intentional discrimination, but they must do so using facts showing that the claim of intentional discrimination is "plausible on its face," allowing the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Resnick* [*v. AvMed, Inc.*, 693 F.3d 1317, 1324–25 (2012)]; *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 556). This may be accomplished by pleading detailed factual allegations consistent with a *prima facie* case of intentional discrimination under the *McDonnell Douglas* framework. *See Jackson,* 372 F.3d at 1271–72.

*Raja v. Englewood Cmty. Hosp., Inc.*, No. 8:12-CV-02083-JDW, 2013 WL 4016518, at *2 n.3 (M.D. Fla. Aug. 6, 2013).

As the Magistrate Judge pointed out, "a plaintiff is not required to plead all the elements of the *McDonnell Douglas* prima facie case to survive a motion to dismiss." (Doc. 48 at 16 n.6). The Magistrate Judge correctly considered whether, in their totality, Staley's allegations pled a plausible claim for intentional discrimination, under the *McDonnell Douglas* framework or otherwise. The court agrees with the Magistrate Judge's conclusion that Staley has failed to state a claim under Title VII.

Staley argues that "[n]umerous courts have held that similar sets of factual allegations are sufficient to withstand motions to dismiss"; that "racist remarks can contribute to a circumstantial case for discrimination when shown to be closely connected in time or context to the adverse employment decision"; and that "the temporal proximity between the discovery of Plaintiff's interracial relationship and the adverse employment actions simultaneously bolsters the inference of discriminatory motive." (Doc. 49 at 22–23).

Staley's case examples involve discrimination claims at the summary judgment stage, indicating that the respective Title VII claims survived the pleading stage; however, the cases otherwise contain no discussion helpful to him. The remaining case law he cites does establish that racist comments can constitute circumstantial evidence of discrimination. *See Ross v. Rhodes Furniture, Inc.*, 146 F.3d 1286, 1291 (11th Cir. 1998). However, for the reasons stated above, that proposition is insufficient to support his claim.

Finally, Staley cites a case in which the Eleventh Circuit found that a seven-week timeframe between an employer's discovery and the adverse employment action was "sufficiently proximate to create a causal nexus for purposes of establishing a prima facie case." *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999). Here, Defendant Bane learned of Staley's interracial relationship in August 2022, approximately 10 months before Staley was terminated

in June 2023.  Although Bane's conduct towards Staley may have changed in August 2022, no real adverse employment action was taken until June 2023.  *See White v. Hall*, 389 F. App'x 956, 960 (11th Cir. 2010) ("Criticisms, negative evaluations, and temporary and non-substantial changes in work assignments are not actions that have a 'serious and material effect' on the terms and conditions of employment" and are therefore not "adverse employment actions" for purposes of a Title VII discrimination claim).

In Staley's final objection, he argues that the individual Defendants Bane and Maddox are not immune from punitive damages.  (Doc. 49 at 25).  Because Staley's only claims against Bane and Maddox are his § 1981 claims, which are due to be dismissed, his objection about punitive damages need not be addressed.

Upon consideration of the Recommendation of the Magistrate Judge and after careful review of the file, the court **OVERRULES** the Plaintiff's objections (doc. 49); **ADOPTS** the Recommendation (doc. 48); **GRANTS** the Defendants' motion to dismiss (doc. 36); and **DISMISSES** this action **WITH PREJUDICE**.

The Court will enter a separate final judgment.

**DONE** and **ORDERED** on this the 31st day of March, 2026.

_____
BILL LEWIS
UNITED STATES DISTRICT JUDGE

21